**Joseph G. Sansone**
**Chief, Market Abuse Unit**
**Simona K. Suh**
**Melanie A. MacLean**
**David Oliwenstein**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281
(212) 336-5699 (MacLean)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**                   **Plaintiff,**  -against-  **BILL TSAI,**                   **Defendant.** | No. 19 Civ. ____  **COMPLAINT**  **JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against defendant Bill Tsai ("Tsai" or "Defendant") and alleges as follows:

**SUMMARY**

1.  This case involves insider trading by Tsai, a junior analyst at a large international investment bank ("Investment Bank A"), in advance of the April 15, 2019 announcement that an affiliate of the private equity firm Siris Capital Group, LLC ("Siris") had agreed to acquire the digital printing technology company Electronics for Imaging, Inc. ("EFII"). On or about March 11, 2019, Tsai learned of the impending acquisition through his work at Investment Bank A. Shortly thereafter, Tsai misappropriated this material nonpublic information by purchasing out-of-the-money EFII call options in a personal brokerage account that he had concealed from

Investment Bank A.  After EFII and Siris announced the acquisition agreement on April 15, 2019, Tsai sold his EFII options, reaping illicit profits of approximately $98,750.

## VIOLATIONS

2. By virtue of the conduct alleged herein, Defendant, directly or indirectly, violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

3. Unless Defendant is permanently restrained and enjoined, he will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint and in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

4. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and seeks to restrain and permanently enjoin Defendant from engaging in the acts, practices, transactions, and courses of business alleged in this Complaint.  In addition, the Commission seeks a final judgment: (a) ordering Defendant to disgorge his ill-gotten gains, together with prejudgment interest thereon; and (b) ordering Defendant to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa].

6. Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York.  For example, Tsai obtained the

relevant material nonpublic information through his work at the New York office of Investment Bank A located in the Southern District of New York.  Tsai also resides in the Southern District of New York, and he resided and worked in this District during the relevant period.

### DEFENDANT

7.  **Tsai**, age 23, is a resident of New York, New York.  Since July 2018, Tsai has worked as an analyst in the New York office of Investment Bank A, a large international investment bank.

### RELEVANT ENTITIES

8.  **Investment Bank A** is a dually registered broker-dealer and investment adviser with its principal place of business in New York, New York.

9.  **EFII** is a digital printing technology company incorporated in Delaware, with its principal place of business in Fremont, California.  EFII's common stock is listed on the NASDAQ under the ticker symbol "EFII."

10. **Siris** is a private equity firm incorporated in Delaware, with its principal place of business in New York, New York.

### FACTS

A.  **Tsai Owed a Duty of Trust and Confidence to Investment Bank A**

11. Tsai owed a duty of trust and confidence to his employer, Investment Bank A, and was obligated to maintain the confidentiality of information that he learned in connection with his employment and to refrain from trading on the basis of such information.  Tsai was repeatedly informed of these obligations, both before and during his employment with Investment Bank A.

12. Tsai first joined Investment Bank A as an intern during the summer of 2017. At the beginning of his internship, Tsai participated in a new employee training course, during which he was informed about Investment Bank A's policies on safeguarding material nonpublic information and insider trading. Among other things, Tsai was informed, and acknowledged, that in his role he would be privy to material nonpublic information, such as information about "potential acquisitions, mergers, [and] restructurings"; that he should keep this information confidential; and that "[t]rading or recommending the trading of securities of a company while in possession of [material nonpublic information] is a VERY serious matter [that] violates both [Investment Bank A's] policies and U.S. federal securities laws."

13. On August 12, 2017, one day following the conclusion of his internship, Tsai received and executed an offer letter accepting a full-time position as an analyst at Investment Bank A, starting after his anticipated graduation from college in May 2018. The offer letter stated, in relevant part, that "[y]ou agree to keep confidential any and all information provided to or otherwise obtained by you, whether relating to [Investment Bank A], its affiliates or clients, and will not at any time use [such information] for your benefit."

14. On July 10, 2018, Tsai started his full-time position at Investment Bank A. Shortly thereafter, in August 2018, Tsai again received and acknowledged his receipt of Investment Bank A's insider trading and confidentiality policies, which provided, among other things, that "[n]o Employee may . . . trade in a security of any issuer (or any related security) while aware of Inside Information relating to the issuer or the security (or any related security)." In total, between July 2017 and November 2018, Tsai completed at least five trainings on these policies.

B.     **Tsai Concealed His Personal Securities Trading from Investment Bank A**

15.    Tsai's August 2017 offer letter from Investment Bank A also stated that "employees are required to disclose all [personal brokerage] accounts to Compliance upon joining the Firm."

16.    Two days after his full-time employment began, Tsai completed a new employee form, which, among other things, reiterated his obligations to: (1) disclose any existing brokerage accounts; (2) trade only through two specific authorized broker-dealers, one of which was Investment Bank A's affiliate; and (3) pre-clear all personal securities transactions through Investment Bank A's compliance program.  Although, at that time, Tsai already maintained, and had recently traded securities in, a brokerage account at an unauthorized broker-dealer (the "Unauthorized Broker-Dealer"), Tsai marked "No" when asked if he had "any employee or employee related [brokerage] accounts to disclose."

17.    In the same document, Tsai also executed an acknowledgement that he had "an ongoing obligation to disclose all of [his] existing Employee and Related account(s) and agree[d] to obtain approval from Compliance before opening any additional account(s)."  Contrary to this acknowledgement, Tsai did not disclose his account with the Unauthorized Broker-Dealer to Investment Bank A, either at that time or later.

18.    Additionally, although he actively traded securities in his undisclosed brokerage account with the Unauthorized Broker-Dealer while employed by Investment Bank A, Tsai did not preclear any of his securities trading in that account with Investment Bank A's Compliance Department, in contravention of Investment Bank A's policies.

**C.  Tsai Misappropriated Material Nonpublic Information from Investment Bank A to Trade in Advance of the EFII Acquisition Announcement**

19.     In his role as an investment banking analyst, Tsai was part of a team that focused primarily on transactions involving companies in the technology sector.  Tsai participated in that team's regular portfolio review meetings and was responsible for, among other things, updating and circulating a confidential internal deal tracking chart referred to as a "pipeline report."  The pipeline report, which Tsai updated and circulated to the team on a weekly basis, contained confidential information about potential transactions on which the team was working, including the nature of the transactions, expected closing dates, anticipated internal approval dates, certain financing terms, and other details.

20.     On or about March 11, 2019, Tsai received an email inviting him to participate in the technology team's portfolio review meeting.  The transactions list attached to the email included a reference to an "LBO" (i.e., a leveraged buy-out) of EFII by Siris, Investment Bank A's client, with a target date of March 27, 2019 for internal approval by a committee at Investment Bank A.

21.     Two days later, on March 13, 2019, Tsai added Siris's planned acquisition of EFII to the pipeline report, noting that, in that transaction, Investment Bank A would provide financing to Siris.  Starting on March 19, 2019, and during each subsequent week until Siris's acquisition of EFII was publicly announced on April 15, 2019, Tsai circulated to his colleagues by email a pipeline report that included the EFII transaction and that noted March 27, 2019, as the target date for internal committee approval and April 30, 2019, as the target date to close on the financing.

22. In addition, on or about April 3, 2019, Tsai learned from a colleague that the EFII transaction was a priority for Siris, and that the client was "focused on getting [the EFII acquisition] done."

23. On March 29, 2019, Tsai began to accumulate EFII call options in his account with the Unauthorized Broker-Dealer. That day, when EFII stock traded at prices ranging from $26.57 to $27.06 per share, Tsai purchased 46 out-of-the-money EFII call options with a strike price of $30 per share and an expiration date of July 19, 2019. During the next two weeks, on April 1, 2, 5, 10, 11, and 12, Tsai purchased an additional 141 EFII call options with the same strike price and expiration date. Overall, between March 29 and April 12, 2019, Tsai purchased a total of 187 out-of-the-money EFII call options, with a $30 strike price and a July 19, 2019 expiration date, at a total cost of $28,410.

24. Before these purchases, Tsai had never traded in EFII securities, and the EFII call options position he established was his largest position in any options series up to that date. All of Tsai's purchases of EFII options were executed on margin.

25. On Monday, April 15, 2019, before market open, EFII announced that it had entered into a definitive agreement to be acquired by an affiliate of Siris in an all cash transaction valued at approximately $1.7 billion. On the day of the announcement, EFII's stock price closed at $38.00 per share, an increase of $8.60 per share (or 29.25 percent) from the prior trading day's closing price of $29.40 per share. The trading volume of EFII stock increased from 375,656 shares on the prior trading day of April 12, 2019, to 9,736,849 shares on April 15, 2019, an increase of approximately 2,492 percent.

26. Tsai sold all of his EFII call options the day the acquisition was announced for approximately $127,160, reaping profits of approximately $98,750.

27. Tsai purchased EFII call options between March 29 and April 12, 2019, while in knowing possession of, and on the basis of, material nonpublic information about the impending announcement of Siris's acquisition of EFII that Tsai had obtained through his employment at Investment Bank A.

28. Tsai knew or was reckless is not knowing that the information he had obtained from Investment Bank A was material and nonpublic, and that he owed a duty to Investment Bank A to keep that information confidential and to refrain from trading on it.

29. By trading in EFII securities for his own benefit on the basis of material nonpublic information that he had obtained from Investment Bank A, Tsai breached a duty of trust or confidence to Investment Bank A.

## CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

30. The Commission realleges and incorporates by reference herein paragraphs 1 through 29 above.

31. Tsai, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails or the facilities of a national securities exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

32. By reason of the foregoing, Tsai, directly or indirectly, singly or in concert with others, violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

**I.**

Permanently restraining and enjoining Tsai and any of his agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**II.**

Ordering Tsai to disgorge all of the unlawful trading profits and all other ill-gotten gains resulting from the violations alleged in this Complaint, and ordering him to pay prejudgment interest thereon.

**III.**

Ordering Tsai to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

**IV.**

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August 12, 2019

*/s/ M. MacLean*

Melanie A. MacLean
Joseph G. Sansone
Simona K. Suh
David Oliwenstein

SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-5699 (MacLean)
macleanm@sec.gov